AF Approval _TLK for SCN_          Chief Approval 

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 2:25-cr-5-TPB-KCD

MADELYN HERNANDEZ

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Roger B. Handberg, United States Attorney for the Middle District of Florida,

and the defendant, Madelyn Hernandez, and the attorney for the defendant,

Douglas Molloy, mutually agree as follows:

**A.    Particularized Terms**

1.    Counts Pleading To

The defendant shall enter a plea of guilty to Counts One through

Five of the Information.  Counts One through Three charge the defendant with

wire fraud, in violation of 18 U.S.C. § 1343. Counts Four and Five charge the

defendant with money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

2.    Maximum Penalties

Count One through Three carries a maximum sentence of twenty

(20) years imprisonment, a fine of up to $250,000 or twice the gross gain caused

by the offense, or twice the gross loss caused by the offense, whichever is greater,

Defendant's Initials _MH_

a term of supervised release of not more than five (5) years, and a special assessment of $100.

Counts Four and Five carries a maximum sentence of twenty (20) years imprisonment, a fine of up to $250,000, a term of supervised release of not more than five (5) years, and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3.    <u>Elements of the Offenses</u>

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.  The elements of Counts One through Three are:

<u>First</u>:  The Defendant knowingly devised or participated in a scheme to defraud some by using false or fraudulent pretenses, representations, or promises;

<u>Second</u>:  The false pretenses, representations, or promises were about a material fact;

<u>Third</u>:  The Defendant acted with the intent to defraud; and

<u>Fourth</u>:  The Defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

Defendant's Initials _____                    2

The elements of Counts Four and Five are:

First:   The Defendant knowingly conducted or tried to conduct financial transactions;

Second:   The Defendant knew that the money or property involved in the transaction were the proceeds of some kind of unlawful activity;

Third:   Money or property did come from an unlawful activity, specifically wire fraud; and

Fourth:   The Defendant knew that the transaction was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or the control of the proceeds.

4.   <u>Indictment Waiver</u>

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.   <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.   <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. § 3663A(a)(b), defendant agrees to make full restitution to Victim 1 and D.R.

Defendant's Initials _MM_         3

7.    <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.    <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant

Defendant's Initials ___    4

complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.    Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require.    If the cooperation is completed prior to sentencing, the

Defendant's Initials _MH_                    5

government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10.    Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course

of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

11.    <u>Cooperation - Responsibilities of Parties</u>

a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

Defendant's Initials _MH_    7

(1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea

Defendant's Initials _MH_                    8

agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)    The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)    The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)    The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

12.    <u>Forfeiture of Assets</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) and 28 U.S.C. § 2461(c) whether in the possession or control of the United States, the defendant or defendant's nominees.  The assets to be forfeited specifically include, but are not limited to, the $4,199,498.42 in proceeds the defendant admits she obtained, as the result of the commission of the offenses to which the defendant is pleading guilty.  The defendant acknowledges and agrees that:  (1) the defendant obtained this amount as a result of the commission of the offense(s), and (2) as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence.  Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offenses of conviction.  The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offenses and consents to the entry of the forfeiture order into the Treasury

Offset Program. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will

Defendant's Initials _MH_                    11

satisfy the notice requirement and will be final as to the defendant at the time it is entered.    In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.  The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the

Defendant's Initials _MH_                        12

defendant's sentencing.  In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

Defendant's Initials _MH_                    13

**B.**  **Standard Terms and Conditions**

1.  Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check or money order to the Clerk of the Court in the amount of $500.00,

Defendant's Initials _MH_                14

payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

The defendant understands that this agreement imposes no limitation as to fine.

2.  Supervised Release

The defendant understands that the offenses to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.  Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.  Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities,

Defendant's Initials _MH_      15

if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

    5.    Financial Disclosures

        Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial

Defendant's Initials _MH_                    16

affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this

Defendant's Initials _M H_                17

plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Defendant's Initials _MH_                    18

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.    The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice

Defendant's Initials _MH_                    19

received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial.  The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set

Defendant's Initials  _MH_                    20

forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

<u>FACTS</u>

From in or about 2018 through on or about May 2024, the defendant, MADELYN HERNANDEZ, did knowingly and intentionally devise a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses and representations related to a material fact, by wire fraud.

The defendant was employed by Victim 1, a textile and apparel supply chain company originally headquartered in New York and later virtually operated since 2019.  Since 2004 until July 2024, the defendant resided in Florida, and she worked remotely for Victim 1.  HERNANDEZ's responsibilities for Victim 1 included placing orders with vendors, coordinating the shipping and invoicing of goods to third parties, and managing inventory for Victim 1.

In early 2024, the owner of Victim 1 informed HERNANDEZ that he intended to close Victim 1 at the end of 2024.  By March 2024, in preparation of closing the company, the owner began inquiring of Victim 1's inventory.  By June 2024, discrepancies in the Victim 1's financial records were noticed, to include, inventory discrepancies and falsified business records.  When Victim 1

Defendant's Initials _MM_                    21

contacted customers to pay purported outstanding invoices, Victim 1 became aware that the invoices, proof of delivery records, and inventory reports were fraudulent that defendant had submitted.

During the review of invoices submitted by the defendant, the owner of Victim 1 identified a supplier by the name of Cape Prints, a purported fabric supply company located in Wilmington, North Carolina, that was controlled by HERNANDEZ. From September 2019 through May 2023, Victim 1 paid fraudulent invoices by causing 45 wires totaling $1,825,850.73 from the bank account of Victim 1 to the Cape Prints account with Bank One account number ending in 6071. According to Sunbiz records, Cape Prints became active on August 29, 2019, with a registered address in Cape Coral, Florida, and the defendant is the listed owner of Cape Prints.

A review of bank records revealed that the defendant opened a bank account at Bank One for Cape Prints on September 05, 2019, and HERNANDEZ is the sole authorized signer on the account.

A financial review of the Bank One account records for Cape Prints revealed that from January 2022 to April 2023, Cape Prints received 20 incoming wires totaling $926,607.85 from Victim 1. Between January 2022 to April 2023, of the $926,607.85 received, $514,4573.64 was withdrawn at a casino. Other transactions on the Cape Prints' account at Bank One included

Defendant's Initials _MH_                    22

numerous rent payments and checks drawn on the account that were made payable to MADELYN HERNANDEZ that were deposited into her account at Bank Two.

The fraudulent invoices for Cape Prints submitted by the defendant to Victim 1 made it appear as if Cape Prints was a supplier of goods when in fact it was a business used by HERNANDEZ to fund her lifestyle. The Cape Prints purported address listed on the invoice was in Wilmington, NC; therefore, the invoice did not reflect any connection to HERNANDEZ. For instance, Cape Prints invoice # R702105-23 dated April 4, 2023, stated there were 215 cartons of Bleach Greige ordered on January 30, 2023, and sold to Victim 1 for a total of $53,247.50 and listed the P.O. Box as the Cape Prints address. Further, the invoice indicated that the terms were due on April 24, 2023, and provided remittance instructions that the sale amount was payable to Cape Prints at the Bank One account number ending 6071. The Bank One account records for Cape Prints showed the payment was received via incoming wire on April 7, 2023, from Victim 1's bank account.

On October 17, 2024, FBI and IRS executed a search warrant for Madelyn Hernandez's residence. The electronic devices including her cell phone were seized.

On October 17, 2024, agents encountered the defendant, and she agreed

Defendant's Initials _MH_                23

to speak with agents.    During the recorded interview, MADELYN HERNANDEZ said she worked for Victim 1 for over twenty years.  She said that she could do the same thing by herself.  HERNANDEZ admitted that she used Cape Prints for a couple of orders.  She said that she created everything herself.  She had a business account for Cape Prints at Bank One, which she admitted to taking money out for personal expenses. HERNANDEZ said that she went to the casino, and she admitted that she has a gambling problem. Initially, HERNANDEZ denied creating false invoices to get money from Victim 1, but she admitted that she used an address in North Carolina and would tell Victim 1 that she is getting a shipment from there.  HERNANDEZ said that she did not want Victim 1 to find out what she was doing. HERNANDEZ admitted that she would email invoices to Victim 1. HERNANDEZ admitted that the owner of Victim 1 told her that he was closing Victim 1.  She said that she got sick and was missing work.  She admitted that she sent a message to her employer stating that she died.  HERNANDEZ said that a lot of times she would pay back the money, but she admitted that sometimes she did not.  She said that she did not think what she took was as high as $4 million.

Furthermore, according to the records of a defunct company, there were no sales to Victim 1 after 2021, as the company was closed.  The investigation

Defendant's Initials _MH_                    24

revealed, however, that the defendant created and submitted fraudulent invoices purportedly from the defunct company to falsely represent that Victim 1 had ordered and received goods from the defunct company.

Between 2018 through 2024, the defendant received $2,348,647.69 from her employer, Victim 1, by creating and submitting false invoices purporting money due and owing to the defunct company for good purportedly ordered and received. The defendant received the money into a bank account at Bank Two that she controlled, and MADELYN HERNANDEZ used the proceeds from the fraud for her own lifestyle, which included supporting her gambling addiction.

More specifically, using the fictious business of Cape Prints, MADELYN HERNANDEZ submitted the following false invoices, which are a representative of the numerous false invoices submitted to Victim 1 for payment:

a. On January 30, 2020, MADELYN HERNANDEZ emailed Victim 1 and attached a false invoice R72981-20 for payment. The invoice was dated January 29, 2020, claiming Cape Prints, with a P.O. Box in Wilmington, NC, sold Victim 1 42 cartons of cotton fabric and was owed $20,292.50. The remittance instructions provided that it was payable to Cape Prints, and Bank One account ending in 6071

Defendant's Initials _MH_                25

was provided to send payment to.  The Bank One account ending in 6071 was in the name of MADELYN HERNANDEZ and Cape Prints.  The account records reflect that on February 7, 2020, that the account received an incoming wire transfer in the amount of $20,292.50.

b. On August 11, 2020, MADELYN HERNANDEZ emailed Victim 1 and attached a false invoice R21023-20 for payment.  The invoice was dated July 21, 2020, claiming Cape Prints sold Victim 1 greige fabric and was owed $45,832.50.  The remittance instructions provided that it was payable to Cape Prints, and Bank One account ending in 6071 was provided to send payment to.  The account records reflect that on August 14, 2020, that the account received an incoming wire transfer in the amount of $45,832.50.

c. On September 18, 2020, MADELYN HERNANDEZ emailed Victim 1 and attached a false invoice R21322-20 for payment. The invoice was dated September 1, 2020, claiming Cape Prints sold Victim 1 greige fabric and was owed $47,272.95.  The remittance instructions provided that it was payable to Cape Prints, and Bank One account ending in 6071 was provided to send payment to.  The account records reflect that on September 29, 2020, that the account

Defendant's Initials _MH_                26

received an incoming wire transfer in the amount of $47,272.95. (COUNT ONE)

d.  On June 14, 2021, MADELYN HERNANDEZ emailed Victim 1 and attached a false invoice R41532-21 for payment. The invoice was dated June 8, 2021, claiming Cape Prints sold Victim 1 85 cartons of natural color 100% Poly 3.2 and was owed $41,895.00. The remittance instructions provided that it was payable to Cape Prints, and Bank One account ending in 6071 was provided to send payment to. The account records reflect that on June 21, 2021, that the account received an incoming wire transfer in the amount of $41,895.00. (COUNT TWO)

e.  On April 12, 2024, MADELYN HERNANDEZ emailed Victim 1 and attached a false invoice number 10-58132 for payment. The invoice was dated April 11, 2024, claiming defunct company, located in Fort Lauderdale, Florida, sold Victim 1 "22 pallets -3 skids" of "rib, Tri-blend, (towel)" and was owed $64,362.04. On April 16, 2024, $64,362.04 was wired into Bank Two account ending 4290. The defendant was a signer on the bank account. (COUNT THREE)

MADELYN HERNANDEZ routinely received proceeds from the wire fraud into her Bank One account ending in 6071, then she often would write

Defendant's Initials _MH_                    27

checks drawn on the Bank One account and deposit the proceeds into Bank Two account in which she was a joint owner.  For instance, on or about April 7, 2023, MADELYN HERNANDEZ wrote a check in the amount of $8000, drawn on her account at Bank One, that she deposited into her account at Bank Two. (COUNT FOUR) On April 8, 2023, HERNANDEZ wrote a check in the amount of $8,000, drawn on her account at Bank One, that she  deposited into her account at Bank Two.  (COUNT FIVE) On April 16, 2023, MADELYN HERNANDEZ wrote a check in the amount of $9,000, drawn on her account at Bank One, that she deposited into her account at Bank Two.  The financial transactions were designed, in whole or in part, to conceal or disguise the nature, source, and ownership of the proceeds obtained from wire fraud.

During the scheme and artifice to defraud, MADELYN HERNANDEZ obtained a total of approximately $4,199,498.42 by means of false and fraudulent representations, by wire fraud from Victim 1.

12.    <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _MH_                    28

13.    Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this __8th__ day of ~~December~~ January, 2025 .

                                                    ROGER B. HANDBERG
                                                    United States Attorney


_____                         _____
Madelyn Hernandez                                   Yolande G. Viacava
Defendant                                           Assistant United States Attorney


_____                         _____
Douglas Molloy                                      Jesus M. Casas
Attorney for Defendant                              Assistant United States Attorney
                                                    Chief, Fort Myers Division


Defendant's Initials _____            29